_____ FILED        _____ LODGED
_____ RECEIVED    _____ COPY

MAR 0 6 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**Anne Prafada,  Plaintiff, Pro Se Litigant**

**845 S CERISE, MESA, ARIZONA**

**Email: mlimasinai@gmail.com; Phone: 602.730.5560**

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anne Prafada, individually on her own behalf and as Guardians Ad Litem of M. a minor. | **CV-18-00718-PHX-DGC** |
| Plaintiffs | **COMPLAINT** |
| Vs. | |
| Mesa Unified School District, Arizona | |
| Defendants | |
| Vs. | |
| State of Arizona | |
| Defendants | |

**TABLE OF CONTENTS**

JURISDICTION AND VENUE................................................................................2

ENJOINING STATE OF ARIZONA.....................................................................6

OPENING STATEMENT OF THE CASE...........................................................7

PARTIES..................................................................................................................8

STATEMENT REGARDING ORAL ARGUMENT........................................10

STATEMENT OF THE CASE.............................................................................10

RIGHTS UNDER FEDERAL DISABILITY STATUTES...............................11

ACTS "UNDER COLOR OF AUTHORITY" OF CIVIL RIGHTS LAW.......................13

UNDER A FEDERAL LAW PROVIDING FOR SPECIFIC CIVIL RIGHTS STATED

IN TERMS OF RACIAL EQUALITY................................................................16

INABILITY TO ENFORCE FEDERAL RIGHTS............................................17

PROTECTED RIGHTS AND ACTS UNDER "ANY LAW PROVIDING FOR . . .

EQUAL CIVIL RIGHTS".....................................................................................21

THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT..................23

THE "SPECIAL CIRCUMSTANCES" EXCEPTIONS.....................................38

STATE OF ARIZONA............................................................................................49

CAUSE OF ACTION AND CLAIMS..................................................................51

CONCLUSION.......................................................................................................53

## JURISDICTION AND VENUE

1. The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C.A. § 1232g) was held not to require exhaustion of administrative remedies before parties aggrieved by alleged violations of FERPA  may assert claims under 42 U.S.C.A. § 1983 premised on FERPA violations in Krebbs v Rutgers (1992, DC NJ) 797 F Supp 1246.

2. Jurisdiction of federal district courts is available when state prosecution is brought for purpose of defeating operations of laws of United States couched in terms of equality, as distinguished from laws that confer equal rights in the sense that they are bestowed upon all citizens. *State of La. v. Broome, W.D.La.1966, 255 F.Supp. 550*

3. Allegations that Plaintiff, as a result of their actions in advocating civil rights, were being prosecuted under state statutes, valid on their face, for conduct protected by federal constitutional guarantees or by federal statutes or by both constitutional and statutory guarantees, were sufficient to sustain a good claim for filing of cases from state court so as to prevent remand of such cases to state court without a hearing. *Cooper v. State of Ala., C.A.5 (Ala.) 1965, 353 F.2d 729.*

4. The rights of students with disabilities are also protected by two other Federal laws: Section 504 of the Rehabilitation Act of 1973 (Section 504), which prohibits disability discrimination in programs or activities of entities, such as public schools that receive Federal financial assistance (29 U.S.C. §794, 34 CFR part 104); and Title II of the Americans with Disabilities Act of 1990 (Title II), which prohibits disability discrimination by public entities, including public schools and other agencies, regardless of whether they receive Federal financial assistance (42 U.S.C. §§12131-12134, 28 CFR part 35)

1. Jurisdiction is conferred upon this Court by 28 U.S. C. § 1331, 1343(3) and (4), (a)The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Individuals with Disabilities Education Act (IDEA), (20 3 U.S.C. § 1400 et. Seq.),

2. Jurisdiction is conferred upon by Section 504 of the Rehabilitation Act of 1973 (42 U.S.C. § 794 et. seq.), the Americans with Disabilities Act, (ADA), (42 U.S.C. § 12101 et. seq.), and the Due Process.

3. Title VI of the Civil Rights Act of 1964 prohibits recipients of federal financial assistance from discriminating against or otherwise excluding individuals on the basis of race, color, or national origin in any of their activities. Section 601 of Title VI, 42 U.S.C. § 2000d, provides: No person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

4. The due process clause of the fourteenth amendment or statutes, 42 U.S.C. § 1983 21 and 18 U.S.C. § 242,272 creating civil and criminal liability for deprivation of due process rights.

5. The Civil Rights Act of 1871, of which 1985 (3) was originally a part, has been reviewed many times in this Court. 7 The section as first enacted [442 U.S. 366, 371] authorized both criminal and civil actions against those who have conspired to deprive others of federally guaranteed rights.

6. 42 U.S.C. § 1983 (1976). The jurisdictional grant of § 1 of the Act is now embodied in 28 U.S.C. § 1343 (1976) which states: The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. ... Although it has been noted

that § 1343(3) affords the jurisdictional basis for the § 1983 cause of action, see Aldinger v. Howard, 427 U.S. 1, 16 (1976);

7. The supreme court opinion states that: "It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. . . ." Monroe v. Pape, 365 US 167 - Supreme Court 1961

8. Jurisdiction of federal district courts is available when state prosecution is brought for purpose of defeating operations of laws of United States couched in terms of equality, as distinguished from laws that confer equal rights in the sense that they are bestowed upon all citizens. *State of La. v. Broome, W.D.La.1966, 255 F.Supp. 550*

9. 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) in that the claim arose in and Defendants and Plaintiff reside in this District.

## ENJOINING STATE OF ARIZONA

This court should enjoin the State of Arizona for the state prosecution brought for purpose of defeating operations of laws of United States couched in terms of equality. The Supreme Court noted that the legal and constitutional questions involved in the prosecution of petty offenses are not necessarily any less complex than those that arise in felony cases. Ex parte Young, 209 U. S. 123, and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. Younger v. Harris, 401 US 37 - Supreme Court 1971.

## OPENING STATEMENT OF THE CASE

The Plaintiff, Anne Prafada would like to start this case with an opening statement to state that this case is not frivolous or malicious and do not contain merit less theories. Pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d *700 Cir.2008) (reasoning that this statement of the Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d

929 (2007) (internal quotations omitted)). Plaintiff request an opportunity to defend the proceeding as to require that every element of the case be established.  Plaintiff would like to states that the governing law supports the legal arguments that would need her to prevail and are of good faith and facts supporting the cause of action and are legitimately supported. The State of Arizona and Mesa Unified School District have exploited the judicial process and subjected her to unnecessary mental anguish by criminally obstructing justice by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation inferring actual or undue influence and appearance or apparent corruption in a Judicial system that should provide better safeguards for both student and parent.   There are new legal grounds of plausible weight, new and additional that supports the position and the allegations have been asserted on this pleading.

Prafada brings other consideration of Individuals with Disabilities Education Act (IDEA), (20 3 U.S.C. § 1400 et. Seq.) and The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C.A. § 1232g). The Individuals with Disabilities Education Act (IDEA), (20 3 U.S.C. § 1400 et. Seq.), Section 504 of the Rehabilitation Act of 1973 (42 U.S.C. § 794 et. seq.), the Americans with Disabilities Act, (ADA), (42 U.S.C. § 12101 et. seq.), Title VII of the Civil Rights Act, 42 U.S.C  § 2000 et seq and the Due Process and Equal Protection Clauses of the United States Constitution violations that were the cause of this case to be

initiated and will support construction of the phrase "criminal prosecutions" for the state criminal charges and all issues arising out of the same series of acts or transactions to prove the claims. Under Younger principles, the number of claims are in a number of respects considerably broader than the claims she will be able to assert in a state court and the relief she seeks in this case is far broader than that which the local court could have granted.

## PARTIES

1. Anne Prafada, is the plaintiff and brings this case on her own behalf.

2. Anne Prafada, also brings this case on behalf of her son, M., Plaintiffs. Prafada have a "legally cognizable interest in M.'s education...Congress has found that the education of children with disabilities can be made more effective by... strengthening the role and responsibilities of parents and ensuring that families of such children have meaningful opportunities to participate in the education of their children at school and at home" Winkelman v. Parma City Sch. Dist., 550 U.S.516, 534 (2007) (citing 20 U.S.C. § 1400(c)(5)).

3. M., Plaintiff resides with her mother, Anne Prafada within the boundaries of the District. M. is a student eligible for special education services. M. is a "child with disability" within the meaning of Individuals with Disabilities Education Act (IDEA), 20 3 U.S.C. § 1402(3)A, 34 C.F.R. § 300.8 and a "qualified individual with a

disability" within the meaning of § 504 of Rehabilitation Act ("Section 504" of "Rehabilitation Act:), 29 U.S.C § 705(20) and Title II of the Americans with Disabilities Act, 42 U.S.C.§ 12131(2), 28 C.F.R. § 35.104 Op.at 3 ¶ 2

4. Mesa Unified School District, Defendant, is a local educational agency (LEA) within the meaning of 20 U.S.C. §1401(15), 34 CFR § 300.28, A Federal funds recipient within the meaning of IDEA, 20 U.S.C. § 1401 and Section 504, 29 U.S.C. 794(b)(2)(B),   and a public entity as defined in the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104.

5. State of Arizona, Defendant

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument to aid the Court in the decisional process regarding the facts and legal issues.

## STATEMENT OF THE CASE

This case is consistent with the Supreme Court decision that Title IX of the Education Amendments of 1972 requires schools to take action to prevent and stop the harassment of students by teachers or other students.  And in Brown v. Bd. of Educ., 347 U.S. 483, 493, 74

S.Ct. 686, 98 L.Ed. 873 (1954) that states, "In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." In recent new decisions from the United States Supreme Court. Endrew F. v. Douglas County School Dist. RE-1, 137 S. Ct. 988 (2017) requires that children with disabilities receive an appropriately rigorous education, and Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743 (2017), explains how children may be protected not only by IDEA but also title II of the ADA and Section 504 of the Rehabilitation Act..   The Supreme Court and other foregoing cases have concluded that Due Process is the judicial safeguard of people's fundamental rights and it's also been determined that students have a property interest in their education and cannot be denied attendance without due process of law (Goss v. Lopez, 1975) and Parental rights are substantive due process rights and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Plaintiffs prevails under all these laws.

**RIGHTS UNDER FEDERAL DISABILITY STATUTES.**

M. is a child with disabilities and experiences a lot of difficulties to function in a mainstream classroom without accommodations.  M. is a child diagnosed with depression, Anxiety, Attention Deficit/Hyperactivity Disorder, ODD, wandering and sleep disorders.  M. has chronic conditions including attention difficulty, hyperactivity, impulsiveness, limited

attention, excitability, fidgeting, absent-mindedness, difficulty focusing, forgetfulness, problem paying attention, or short attention span, learning disability, panic attacks, racing thoughts and unwanted thoughts, poor concentration, insomnia, argumentative, persistent problems falling and staying asleep, slowness in activity, persistently depressed mood, loss of interest in activities, easily gets sidetracked, fidgets and squirms in his seat or leaves his seats, always on the move or "on the go", blurts out comments, answers and questions, poor penmanship, hard time staying on track, does not turn in assignment on time and needs constant reminders, difficult time taking tests, prefers asking questions instead of working, talks frequently, need for repeated directions and redirection. Individuals with Disabilities Education 18 Act (IDEA), (20 3 U.S.C. § 1400 et. Seq.), Section 504 of the Rehabilitation Act of 1973 (42 U.S.C. § 794 et. seq.), Americans with Disabilities Act, (ADA), (42 21 U.S.C. § 12101 et. Seq.) all define disabilities as (A) Physical/mental impairment that substantially limits one or more of the major life activities of such individual; (B) Record of such an impairment; (C) Being regarded as having such an impairment. M. has sufficient documentation to support clinical diagnosis. M. receives medical treatment including prescriptions to help diminish and relief him of his symptoms. 34 C.F.R. §104.3(j)(1)(ii)-(iii). Mesa Unified School District acting under the color of law have acted maliciously and in reckless disregard of the plaintiff's federally protected rights by initiating a criminal cause of action by intentionally discriminating on both student and parent. M. was

excluded and denied FAPE through frequent classroom removal that were a manifestation of his disabilities.  Both parent and Student were retaliated and discriminated upon by threats of criminal prosecution and the School District acting under the color of law, took doctors appointments dates and classroom removals in order to achieve the threats. Medical care is treatment guaranteed by the Constitution and Federal Law and threatening parent with criminal prosecution is against the Eighth Amendment to the Constitution— prohibiting "cruel and unusual punishment" The Due Process Clause to the U.S. Constitution (Fifth and Fourteenth Amendments) violation.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. See generally 28 C.F.R. §35.130(b)(1). It is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." Brown v. Bd. of Educ., 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954).  The Supreme Court made clear that Title IX of the Education Amendments of 1972 requires schools to take action to prevent and stop the harassment of students by teachers or other students.

## ACTS "UNDER COLOR OF AUTHORITY" OF CIVIL RIGHTS LAW

The Federal department of education is concerned by the regulation necessitate by the school absenteeism policy and the Federal government is committed to a policy that support to the absenteeism policy that require absenteeism to be 10% of the 180 days school day required and many states now across the country counts chronic absence as missing 10 percent of the previous 180 school days.  Mesa Unified School District acting under the color of authority, significant intrusion of their own conduct calls for areas of federal concern and mist be identified and connection be made between Special Education Students rights and the conduct for which prosecution is brought for absenteeism must be litigated. The conduct for which Prafada is prosecuted is conduct protected by the federal constitutional guarantees of civil rights that authorizes and requires the appropriate Federal district court to entertain and dispose of her Federal contention.

Prafada has been incriminated in a court of law for doing what the law allowed her to do.  M. is a child with disabilities that needs the care of a doctor.  Prafada takes M. to the doctor.  The days that Prafada was cited to court are days when she took her son to doctor's appointments for approximately two hours thirty minutes(2:30) on each appointment and M. was taken to school thereafter. In the year 2015;2014 Prafada took her son to the doctor's but she was

never cited to court. In the year 2017;2016 Prafada took her son to the doctor's but was never cited and she continues to take care of her son.  But in the year 2015;2016 M. complained of racial discrimination and the school acted quickly actually within three days to incriminate M. by issuing a fraudulent truancy ticket a violation of due process.  The School District acted quickly in order to gain a tactical advantage over M. During M.'s said "Juvenile Court" hearing conducted by Mesa Unified School District acting under the color of law and within Mesa Unified School District Offices, an administrator of Mesa Unified School District together with an officer of juvenile court rejected evidences submitted pursuant to Federal Rules of Evidence, Article VIII Rule 803 4(a), 6(b)(c), reasonably pertinent to — medical diagnosis and doctor's appointment and  the record kept by the school district as proof that some of the days cited were classroom removals by School itself.  Parent also informed them that his son has been denied accommodations required per Child Find Mandate pursuant to Individuals with Disabilities Education Act (IDEA).The evidences were rejected and she was threatened with criminal prosecution if she does not agree M. to be incriminated.    Due process clause of the constitution was denied changing both substantive and evidentiary law and violating the constitution by dictating decisions and outcomes of findings. Under 5 CFR § 732.301 Both the administrator and the officer of juvenile court tried to convince her not to worry because once M. turns 18 years of age she could go to court and have his criminal records expunged. Parent informed them

incrimination will mask the classroom removals and an admission of guilt.  Threatening to use the criminal process to coerce a subversion of Federal Regulation of Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act of 1973 that provides for accommodations for students is fraud.  Further, it's against the criminal process and fraud deterred to parent from asserting her legal rights, abuse of process, improper use of criminal process diminishing public confidence in the legal system. The charging sheet used to bring the charges was also fraudulent with fabricated information. The classroom removal absences were direct result of the School District failure to evaluate and implement an IEP for M. [§300.530(e)(1)-(2)] The involvement of the criminal justice system in schools have recently gained a name: the school-to-prison pipeline. The phrase "refers to the practice of funneling students currently enrolled in school to the juvenile justice system". Hawker v. Sandy City Corp., 774 F. 3d 1243 - Court of Appeals, 10th Circuit 2014. Also for the School District to initiate a criminal proceeding because Prafada has done what the law plainly allowed her to do is a due process violation of the most basic sort and for an agent of the State acting under the color of law to pursue a course of action whose objective is to penalize a person's reliance on her legal rights is `patently unconstitutional.' *Bordenkircher v. Hayes* (1978).  The Court in *Dombrowski* v. *Pfister,* 380 U. S. 479 (1965), held that the threats to enforce the statutes against Prafada are not made with any expectation of securing valid convictions but rather are part of a plan to employ

threats of prosecution under color of the statutes so as to discourage parent from asserting and attempting to vindicate the constitution rights of parents granted by United States Constitution. The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the State to force or incriminate anyone in the court of law or allow prosecution for exercise of, her rights under any law providing for equal rights of citizens. It is patent that the civil and criminal liability of the federal statutes is designed in principal part to deter state interference with the constitutional rights which it protects.

## UNDER A FEDERAL LAW PROVIDING FOR SPECIFIC CIVIL RIGHTS STATED IN TERMS OF RACIAL EQUALITY.

On 2nd February, 2016 The School documented that M. complained of racial discrimination due to frequent classroom removals and the statement "Once you go black, you never go back" was documented authorizing the removal of this case involving rights under law providing for equal civil rights.  These statement "Once you go black, you never go back" were documented and three days later, criminal proceedings were initiated inferring that this criminal process is on the basis of racial equality, disability, retaliation and discrimination. Civil Rights Acts statute applies to both civil and criminal cases and even though the Court was ostensibly firm in its mandate that rights be "stated in terms of racial equality," it did not appear to demand any articular mode of expression of the racial element. The principal

rights provided with removal protection by the Acts of 1866 and 1870 denoted the requirement of racial equality by the phrase "as is enjoyed by white citizens."' Therefore, it appears that to qualify under the Court's formula the "law" does not have to employ the word "race" such as was done in the civil Rights Act of 1964 but merely may utilize words importing that the rights are founded on racial equality.    LSC t Sir Winston – scholarship.law.duke.edu. The criminal judgment against Prafada has no basis and is racially motivated and fraudulently been entered.

## INABILITY TO ENFORCE FEDERAL RIGHTS

The U.S. Department of Education has issued guidance to superintendents and chief state school officers regarding public school attendance policies.    When Congress rewrote federal education law in 2015 holding schools accountable for student absences, it encourage schools to tamp down on unduly harsh discipline policies that are pushing students out of school. Prafada's son was subjected to classroom removals due to manifestation of his disabilities.   The school has recorded 109 classroom absences, 52 tardies and 22 ALC in 2015/2016. 101 classroom absences, 50 tardies and 11 ALC in 2014/2015.   The civil rights acts statute protects all civil rights guaranteed by the fourteenth amendment by a defendant who is denied or cannot enforce in the state courts "a right under any law providing for the equal civil rights of citizens of the United States

or of all persons within the jurisdiction thereof." Prafada is a victim who has been denied due process and prevented from providing a valid claim and establishing a valid defense required by statutory law whom as a result of her actions in advocating civil rights, has been prosecuted under what Federal law allowed her to do and is protected by both Statutory, Federal and Constitutional guarantees. In Monroe V. Pape, a landmark decision, the court held that a cause of action is stated under section 1983 whenever the plaintiff alleges a denial of due process at the hands of state officials.   Prafada has experienced both Judicial and Prosecutorial vindictiveness with a hearing tainted by fraudulent testimonials and reports, being denied full and complete preliminary examination of issues before trial and denied to raise Federal claims and issues or submit evidence at trial.   The prosecutor failed to investigate claims as required before proceeding with prosecution creating a long trail of fraudulent conduct. Courts are supposed to ensure that charges are not brought for improper purposes.   The judgment was also entered after the expiry of Title 18 USC 3162 of Criminal Procedure.  The Interstitial rules of judicial process shifted responsibility for integrity of judgments further away from the School District failing in normative vision of fair process inferring actual or undue influence and appearance or apparent corruption in a Judicial system that should provide better safeguards for both student and parent.   Mr. Justice Black also said.... tampering with the administration of justice as indisputably shown here involves far more than injury to a single litigant. It is a wrong against the

institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistent with the good order of society." Hazel-Atlas Glass Co. v Hartford-Empire Co., 322 U.S. 238 (1944).

Prafada also took her case to Arizona Court of Appeals, Division One, via a Special Action Petition.  The courts of appeal has decided to recharacterize her case from criminal to civil and has denied to confirm whether she will also partake any criminal relief by recharactization.   Civil jurisdiction fails to comports with constitutional guarantees of Due Process Clause of the Fourteenth Amendment to the Constitution. The decision to recharactization from Criminal to Civil is abuse of discretion unless a warning is clearly given stating the case and results will partake both criminal and civil relief which was not granted.  Initiating civil proceeding was an abuse of process, abuse of executive power and an abuse of discretion. When a court decides to initiate a civil case on behalf of a defendant and neglects to issue notice that she is abandoning her criminal claims, its legal trickery and deceit designed to obviate fairness especially when dealing with pro se litigants.   It's abuse of process and abuse of power to recharacterize a litigant's jurisdiction unless by first informing the litigant of its intent to recharacterize, warn the litigant that what recharactetization means.   Failure to warn whether the case will seek to partake both criminal and civil relief simply underscores the practical importance of providing the warning. Castro v. United States, 540 U.S. 375 (2003).   The Court of Appeal – Division

One is asserting case law. State v. Chopra to recharacterization in exercise of civil jurisdiction. Eight amendment is a ubiquitous part of the criminal justice system and case law State V. Chopra interpretation serves to conduct misleading colloquys that does not benefit defendants, prosecutors and the courts alike. In his analysis, Judge miller emphasizes "limited nature of the disclosure required" and that the denial of Jurisdiction to the case was because the case "is not warranted as to issue of statewide importance".   State v. Chopra, 387 P. 3d 1282 - Ariz: Court of Appeals, 2nd Div. 2016.  The assertion of this case law on Prafada's Federal Educational claims is outright clear that the Federal Claims will also be denied.  The Court in Dombrowski went on to say: "But the allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights.  They suggest that a substantial loss of or impairment of freedoms of expression will occur if Plaintiff must wait the state court's disposition and ultimate review in this court of any adverse determination.  These allegations, if true, clearly show irreparable injury. "380 U.S., at 485-486.

## PROTECTED RIGHTS AND ACTS UNDER "ANY LAW PROVIDING FOR . . . EQUAL CIVIL RIGHTS"

It is not easy for an indigent parent to talk about appearance or apparent corruption and fraud in a clear or consistent voice without fear after being discriminated and retaliated

against. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is `patently unconstitutional.'" *Bordenkircher v. Hayes* (1978). The appearance of corruption stemming from School District acting under the color of law, prosecutorial and judicial act of vindictiveness clearly shows the appearance of improper influence and a form of corruption. Statutory interpretation should not be used to cover up in avoiding decisions that are clear with honest declarations of what the law is and why.

U.S. Department of Education, the Every Student Succeeds Act (ESSA), the Congress and policymakers all navigate the challenges of including chronic absenteeism in their school measurement systems and all agree that absences are excessive when they exceed 10% of attendance required as 180 full days for calculation purposes.

https://www.future-ed.org/wp-content/uploads/2017/09/REPORT_Chronic_Absenteeism_final_v5.pdf Approximately two hours, thirty minutes (2:30) on each doctor's appointments is no where near the 10% threshold. The standard for attendance and chronic absenteeism, defining attendance as a calculation of standard clock hours in a day that equal(s) a full day based on instructional minutes for both a half day and a full day per learning environment. Prafada still did not meet the 10% threshold to be incriminated in a court of law. 10% of 180 full day attendance

is equals to 126 hours for a school that starts at 9am and ends at 4pm.(7hours per day x 18days)   Prafada was cited for fraudulent twenty nine days which comprised of doctors appointments and classroom removals.   Hypothetically, even if Prafada was reliable she never exceeded approx. two hours thirty minutes of appointment time(2:30) therefore equals 29 x 2.30 hours of absences = 66.70 hours.   This is no where near the 126 hours absence threshold required. Even so, Prafada refuses to be held reliable and accountable for classroom removals and therefore the 66.70 hours remain fraudulent.   Even so M. is protected under 34 Code of Federal Regulations §300.8 under child with disability. The Department of Education defines an excused absence as absence due to illness, doctor appointment, bereavement, family emergencies and out-of-school suspensions. These provides a road-map for leveraging absenteeism before trying to incriminate anyone in a court of law. The governing policies and procedures concerning pupils with chronic health problems are to protect parents so no one can obstruct, interfere with or override the rights of parents or guardians and authorize parents to make educational decisions for their child.  34CFR 300.30 (1)A and 34 CFR 300.30(1)(3)   IDEA mandates that educational agencies establish procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a FAPE." § 1415(a). It presumes parents have rights of their own when it defines how States might provide for the transfer of the "rights accorded to parents" by IDEA, § 1415(m)(1)(B), and it prohibits the raising of

certain challenges notwithstanding any other individual right of action that a parent or student may maintain under the relevant provisions of IDEA," § 1401(10)(E), §1412(a)(14)(E). Winkelman v. Parma City School Dist., 550 US 516 - Supreme Court 2007.

## THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT

The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C.A. § 1232g) was held not to require exhaustion of administrative remedies before parties aggrieved by alleged violations of FERPA may assert claims under 42 U.S.C.A. § 1983 premised on FERPA violations in Krebbs v Rutgers (1992, DC NJ) 797 F Supp 1246. The Office of Dispute Resolution and Administrative Services (ODRAS) also require all documentation including in proposed and/or refused action and/or in prior written notice be based on the information which was provided by the parent, along with other members of the team, orally and/or written, during the decision making processes associated with the evaluation, identification, placement, and provision of FAPE for a child. No one is required to add, subtract, or otherwise include information that is not true or correct or does not deem it necessary but to ensure that all of the required elements are included. The School District egregious procedural of falsifying, misrepresenting information and facts shows deliberate indifference clearly indicating intentional discrimination.

The criminal prosecution is a tactical strategy by Mesa Unified School District in order to gain advantage over Federal Claims. A Criminal Judgment affects Jurisdictional claims and may compromise the claims to prescribe relating to behavior, the claim to regulate, the claim to enforce and the claim relating to breaches of regulations by the School District. The School District acted with deliberate indifference failing to provide reasonable accommodation and designed plan that adequately meets the needs of M.   "Deliberate indifference entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Thus, it is the equivalent of acting recklessly"  Farmer V. Brennan, (1994). Plaintiff lists some incidence just enough to draw a point into this case and all should be taken as a violation The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C.A. § 1232g). The Individuals with Disabilities Education Act (IDEA), (20 3 U.S.C. § 1400 et. Seq.), Section 504 of the Rehabilitation Act of 1973 (42 U.S.C. § 794 et. seq.), the Americans with Disabilities Act, (ADA),    (42 U.S.C. § 12101 et. seq.), Title VII of the Civil Rights Act, 42 U.S.C § 2000 et seq and the Due Process and Equal Protection Clauses of the United States Constitution.  Plaintiff alleges as follows:

1. Plaintiff alleges that at on 11.18.2016 The Multidisciplinary Evaluation Team (MET) Report was fraudulently and maliciously, tampered, altered, destroyed or concealed

with intent to impair its verity, legibility, or availability. Spoliation of The Multidisciplinary Evaluation Team (MET) Report is negligence, reckless and intentional destruction of report in order to not effectively provide FAPE. The School District had intentional predetermined the meeting by deciding to misinterpret data, fraudulently and maliciously acting of spoliation of the report in order not to provide all relevant domains under the IDEA, including math accommodation, behavioral, social, and emotional domains. The School District is a public agency required to ensure that reevaluation of each child with a disability is conducted according with 34 CFR 300.303, 20 U.S.C. 1414(a)(2). Re-evaluation may occur not more than once a year, unless the parent and the public agency agree otherwise. Screening of a student teacher does not constitute as a re-evaluation. The screening of a student by a teacher or to determine appropriate instructional strategies for curriculum implementation can not be considered to be an evaluation for eligibility for special education and related services. 34 CFR 300.302, 20 U.S.C. 1414(a)(1)(E) The School District acted with deliberate indifference by spoliation of the report. The information deleted is substantial and an abuse of special education provisions.

The following information were deleted from the original evaluation:

    a) Assessments by the teachers.

b) Assessments from The Wechsler Intelligence Scale for Children, Fifth Edition (WISC-V) results.

c) Visual Spatial The Visual Spatial Composite (VSI)

d) The Fluid Reasoning Composite (FRI)

e) The Working Memory Composite (WMI)

f) The Processing Speed Composite (PSI)

g) Summary of 2-6 Results

h) The Behavior Rating Inventory of Executive Function (BRIEF)- Behavior Regulation Behavior Regulation

i) Metacognitive Skills

j) Conners CBRS Content Scales

k) The Core Language Score and the Index scores

l) Social Language Evaluation Results

m) Visual Motor/Perceptual Skills

n) State and District Testing results.

2. Plaintiff alleges that on 5th May 2016, in violation of Title IX of the Education Amendment of 1972, the Assistant Principle acknowledged that M. was being

mishandled by a P.E. teacher and a Social Studies teacher by frequent classroom removals for no apparent reason.

3. Plaintiff alleges that on On 04.22.2016 A student injured himself and when M. left to go take him to the nurse which the nurse confirmed for both student to have been there, the school documented that he was truant which was fabrication of information in order to maliciously decorate his behavior profile.

4. Plaintiff alleges that on 02.25.2016 M. was sick and taken to urgent care. A fraudulent criminal judgment was entered.

5. Plaintiff alleges that on 02.02.2016 M complained about being racially being discriminate and was removed from class instead of complaint being resolved. Plaintiff realleges the claim herein as discussed above under 28 U.S.C. § 1443(1) Under A Federal Law Providing For Specific Civil Rights Stated In Terms Of Racial Equality. Fraudulent criminal judgment entered for school own conduct.

6. Plaintiff alleges that on 01.25.2016 M. had a doctor's appointment and was back in school after approximately two hours thirty minutes. (2:30). A fraudulent criminal judgment was entered for what the constitution allowed her to do.

7. Plaintiff alleges that on 01.21.2016 M. was not feeling well and was removed from class for two consecutive days for that on 01.21.2016 and 01.22.2016. M. has chronic conditions and on this particular day he was absent-minded and having a difficulty

time focusing, paying attention, he was having racing thoughts and could not concentration and had lost interest. When M. feels this way most of the time he just want to leave or take a short break but the School District had denied him an IEP so he did not have any accommodation. According to his teacher and parent quotes, "I'm not exactly sure why M. wasn't happy yesterday. He wasn't a behavior problem, but he kept asking to be sent out. He was respectful and obedient, but refused to work nor participate in our class discussion… maybe you could ask him about it. And also maybe you could let him know that I was happy with how he treated me, I just wasn't happy that he didn't work. Thank you! Have a great weekend!" The School District fraudulently documented that M. was disruptive and punished by classroom removal. Fraudulent criminal judgment entered for school own conduct.

8. Plaintiff alleges that on 01.11.2016 M. was in school and A fraudulent criminal judgment was entered.

9. Plaintiff alleges that on 01/07/2016 of deliberate indifference and discrimination. It was documented that, "student came to the front office with a attendance sheet from the sub. From art (Mrs.Erickson), later he came back asking for a tardy slip to get to his regular 1st per. Class, I told hi no, cause he was on time, he said he know that's what he told the sub. But than I figured it out that he was not in his regular class, so I told him that it was a ditch because he was supposed to be he his class not in any

other class. I will assigned him lunch detention for 01/08/16. ag"  The school district has a system of defaming M. by documentation on his Behavior profile. Things were never document the way they should but were documented to defame M. The attendance statements clearly states that M. was not late, " I told hi no, cause he was on time" M. removed from class. Fraudulent criminal judgment entered for school own conduct.

10. Plaintiff alleges that on 01.06.2016 M. had a doctor's appointment and was back in school after approximately two hours thirty minutes. (2:30).  A fraudulent criminal judgment was entered for what the constitution allowed her to do.

11. Plaintiff alleges that on 01.04/2016,   M. was experiencing chronic conditions including attention difficulty, hyperactivity, impulsiveness, limited attention, excitability, fidgeting,  difficulty focusing, problem paying attention, or short attention span, poor concentration, insomnia, argumentative, loss of interest in activities, easily gets sidetracked, fidgets and squirms in his seat or leaves his seats, always on the move or "on the go", blurts out comments, answers and questions, hard time staying on track, prefers asking questions instead of working, talking frequently, need for repeated directions and redirection.  According to his teacher parent was notified that, "He and I talked back and forth after class today about how he has different rules and consequences than other students. He was really frustrated about that and I

thought maybe you could just talk about the idea that life isn't fair and it's okay. Last quarter he wasn't able to get out of his seat without permission. He had lost the privilege because he had wandered too many times and distracted others. So it wasn't fair that he couldn't get out of his seat, but it okay. It made sense. Maybe listen to him and guide him that things aren't fair." The teacher's own statement states that he was having difficulties with the manifestation of his disabilities by "wandering to many times" and "could not seat on his seat". M. removed from the class. Fraudulent criminal judgment entered for school own conduct.

12. Plaintiff alleges that on 12.14.2015 M. had a doctor's appointment and was back in school after approximately two hours thirty minutes. (2:30). A criminal judgment was entered for what the constitution allowed her to do.

13. Plaintiff alleges that on 12.15.2015 and 12.18.2015. M. needed IEP. functional behavioral assessments (FBA) and behavior intervention plans (BIP) and the assistant of a qualified paraprofessional was also needed to help out the teacher because of the need to repeated directions and redirection. M. "wandering to many times" and "could not seat on his seat". Fraudulent criminal judgment entered for school own conduct.

14. Plaintiff alleges that on 12.11.2015 M. had a doctor's appointment and was back in school after approximately one hour (1). Fraudulent criminal judgment entered for what the constitution allowed her to do.

15. Plaintiff alleges that on 12.10.2015 M. had a doctor's appointment and was back in school after approximately two hours thirty minutes. (2:30). Fraudulent criminal judgment entered for what the constitution allowed her to do.

16. Plaintiff alleges that on 12.07.2015 M. had been removed from class for tardiness. M. is slow when it comes to changes to routines and transitions from one activity to another. During his evaluation and it was documented on his Multidisciplinary Evaluation Team (MET) Report and determined this to be as a results of manifestation of his disabilities and M. required accommodations on his IEP to resolve the tardy problems. M. removed from classroom. Fraudulent criminal judgment entered for school own conduct.

17. Plaintiff alleges that on 12.03.2015 M. was in school and a fraudulent criminal judgment entered against parent.

18. Plaintiff alleges that on 11.20.2015 M. A fraudulent criminal judgment was entered for taking M. to seek medical treatment and for what the constitution allowed her to do.

19. Plaintiff alleges that on 11.18.2015 M. A fraudulent criminal judgment was entered for taking M. to seek medical treatment and for what the constitution allowed her to do.

20. Plaintiff alleges that on 11.09.2016 She took her son to doctor's appointment and M. was not feeling well that day.  Fraudulent criminal judgment entered  for what the constitution allows her to do.

21. Plaintiff alleges that on 09.30.2015 M. had a doctor's appointment and was back in school after approximately two hours thirty minutes. (2:30).  A criminal judgment was entered against parent and for what the constitution allowed her to do.

22. Plaintiff alleges that on 09.28.2015 M. was late for eleven (11) minutes.  Parent incriminated in a court of law for this eleven minutes.

23. Plaintiff alleges that on 09.18.2015 It is documented as a classroom removal.  Fraudulent criminal judgment entered for school own conduct.

24. Plaintiff alleges that on 09.15.2015 M. had a doctor's appointment and was back in school after approximately two hours fifty three minutes. (2:53).  Fraudulent criminal judgment was entered for what the constitution allowed her to do.

25. Plaintiff alleges that on 09.14.2015 M. had a doctor's appointment and was back in school after approximately one hours fifty three minutes. (1:53).  Fraudulent criminal judgment was entered for what the constitution allowed her to do.

26. Plaintiff alleges that on 09.08.2015 M. was sick and was given that day off and two more days by the doctor. On 09.09.2015 parent took M. to school and arrived there at 3.47pm just 13minutes before end of school to pick up homework for 09.08.2015 and 09.09.2015. On 09.10.2015 M. was worried to lag behind with school work and while he was not fully recovered decided to go to school. M. got there after one hour fifty three minutes. (1:53). M. loves school despite his disability challenges. Fraudulent criminal judgment entered for what the constitution allowed her to do.

27. Plaintiff alleges that in 2014, 2015 and 2016 The School District acted with deliberate indifference by fraudulently changing information in school records in order to punish M. M. was punished by being removed from his class and punished by detention or in School Suspension due to manifestation of his disabilities. M. has chronic conditions including excitability, racing thoughts and unwanted thoughts, argumentative, loss of interest in activities, easily gets sidetracked, fidgets and squirms in his seat or leaves his seats, always on the move or "on the go",needs constant reminders, need for repeated directions and redirection. M. was denied the Child Find Mandate provision in order to be provided with an IEP. functional behavioral assessments (FBA) and behavior intervention plans (BIP). Records were changed to state tardiness as reasons for removal even when he was not tardy so as the school could decorate his profile to show it was his fault. Even when M.

was not late for class, he was marked tardy when he would fidget and squirm in his seat or leaves his seats because of the constant urge to move.   M. required accommodations to allow him to take frequent breaks or to stand at the back of the class when he would feel these urges to move.  M. also needed repeated directions and redirections and reminders to be seated if the School was not going to provide the accommodations.  M. denied an IEP or functional behavioral assessments (FBA) and behavior intervention plans (BIP) M. was punished by class removals.

28. Plaintiff alleges that 02.24.2016 M. had other chronic manifestation of his disabilities conditions. He was having difficulty paying attention, difficulty focusing, short attention span, learning disability, racing thoughts, poor concentration, slowness in activity, hard time staying on track, needed constant reminders and repeated directions and redirection. His teacher stated, "I wanted to talk to you about some good and bad things about M today, First off, he currently is close to an A. He always seems to care enough to complete his assignments. It's a wonderful trait! He is struggling with being on-task in class. He will probably have that as a challenge for awhile. Today, however, after repeated directions and re-directions, he still wasn't being on task. We were halfway through the worksheet before he even sat down to get it out. What made this difficult was that he kept claiming that he didn't understand what to do. Directions were written, procedure are in places, and there were cues all around for him to

follow, but instead he raised his voice in frustration to me." It is also obvious that a qualified paraprofessional was needed to help out the teacher because of the need to repeated directions and redirection. M. had been shoved into a special education class that was also inadequately staffed. Then fraudulently documented that M. "yelled" This is **defamation on M**. because of intentional misrepresentation, deliberate indifference to a child who needed special education in order to function in a mainstream classroom. M. punished by classroom removal.

29. Plaintiff alleges that on 10/26/2015 M. had manifestation of his chronic conditions and was removed from class for two days 10/27/2015 and 10/28/2015. Fraudulent criminal judgment entered for school own conduct.

30. Plaintiff alleges that on 12/15/2016 M. had manifestation of his chronic conditions. M. was removed from class on that day the 12.15.2015 and removed for two more days 12/17/2015 and 12/18/2015. Fraudulent criminal judgment entered for school own conduct.

31. Plaintiff also alleges that on 11.09.2015 the deliberate indifference and the fraudulent documentation of school records did not only attack student but parent too. Every time parent would drop M. to school there was a file folder for her to sign him in or off. One day she comes in and the file was not there. The office attendant informs her it's okay for M. to sign himself in. Parent asked if she was serious about the information and if

it was accurate but she informed her that the school is aware that she drops M. in and the required doctor's appointments and so parent doesn't really need to sign him in. Few days later it was documented that, "Mom explained to me that she goes to work early and M. does not get up on time for school so that is why he is late, she brings him to school when she gets home from work, sometimes." Decorating a student's file with defamation and malicious information is truly evil. Parent has never had a day job. And even when she works, she works night shift and is home by 6:30 am. The school schedule starts from 9am. Parent has two other children with no absent or late records that she is responsible for. The School District has Unsound and unprofessional practices. In another incident, When parent requested for evaluation under IDEA, the School District completely refused and would not budge. Parent sort for help with The Arizona Center for Disability Law. The Arizona Center for Disability advised her to make all request in writing and to copy them. It's at this point that the School District saw the copy to; that they got interested in evaluating him. The School District had keen interest to know whether Arizona Center for Disability Law was helping parent or not. When they found out that parent was on her own they denied evaluation and stated "The teachers, psychologists and the counselor did not believe an evaluation for specialized instruction was needed as accommodation will meet his needs" M. did not have any accommodations other

than the one on one (1:1) and small group in English that was provided without complying with the IDEA regulations in order to provide all services; evaluation, eligibility, IEP, functional behavioral assessments (FBA) and behavior intervention plans (BIP). These accommodation did not provide M. a reasonably calculated meaningful educational benefits and he was partially proficient in his assessments but his grade was inflated and was given an A. Following this denial to evaluate, parent notified them that she is not alone but with Raising Special Kids an organization that serves children with disabilities and their families. Since the psychologist had already given the parent the denial prior written notice she panicked and she followed parent while waiting for M. at the nurses office. She informed her that she should shred the prior written notice because she has new ones. On being suspicious of her conduct parent shredded a blank document but kept the prior written notice. To parents shock, the new, prior written notice stated, "parent signed permission to evaluate to determine eligibility and need for special education, however rescinded consent at the end of the meeting expressing that she wants to consult with an outside agency first. Parent placed the signed consent into the shredder". Parent is still at alter shock at the length at which the School District can change information to reflect badly on both student and parent. What the psychologist didn't know at the time was that when she asked parent to shred the

original papers, she never did but shredded a blank paper.  Parent still retained the original document that denied accommodation and when she reported to the school District, the School District did not do anything. The level of discrimination is high tech through fraudulently documented information. Only fraudulent information goes in record and if a parent is incriminated in court, without evidence, the parent is doomed. If it were not for Raising Special Kids attendance and participation during the evaluation process, M. would not have been provided any Special Education services.

## THE "SPECIAL CIRCUMSTANCES" EXCEPTIONS

This consideration also is to support construction of the phrase "criminal prosecutions" in support to state criminal charges arising out of the same series of acts or transactions. NAACP v. Button, 371 U.S. 415, 433 (1963).   The State Court Proceedings on its face infringes federal guarantees and other trespasses or wrongs, made or committed by virtue of or under color of authority derived from any law providing for equal rights as aforesaid, or for refusing to do any act on the ground that it would be inconsistent with such law. Prafada will not effectively be able to enforce her federal rights and those of her son in the state courts due to unconstitutional trial procedure, pretrial procedure and the probability of loosing all the conditions giving rise in this case that the state court has continued to

reject all valid claims.   Child Find Mandate under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., and provision of a free appropriate public education enunciated by the United States Supreme Court in Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988 (2017); is a one which the congress meant to protect, and the claims of child removal from normal educational setting due to his disabilities, is one of the constitutional liberty that already have the vulnerability of destruction by the state process. The risk that the violation of Child Find Mandate and frequent class removal amounts to her sons right's practical destruction protected by Federal Rights.   For the School District to deny these constitutional liberties and to turn around and initiate a criminal case speaks generally of the denial of or inability to enforce for conduct colorably protected by the Federal amendments.   Prafada alleges the following:

1. Plaintiff alleges that at a meeting held on 01/31/2018 Parent was denied Due process of law 5 CFR § 732.301 that requires records used in making decision are accurate, relevant, timely, and complete to the extent reasonably necessary to assure fairness to the individual in any determination. The meeting to discuss transitional data and review accommodations was predetermined and interpretation that could impend M. right to FAPE and progress were made.   The School District misinterpreted data significantly impending parents opportunity to participate in decision making process

regarding the provision of FAPE.   Predetermination can deny the child a free appropriate public education (FAPE). (Deal v. Hamilton County Bd. of Edu., 392 F.3d 840 (6th Cir. 2004)). "Predetermination occurs when an educational agency has made its determination prior to the IEP meeting, including when it presents one placement option at the meeting and is unwilling to consider other alternatives." (H.B. v. Las Virgenes USD, 239 Fed. Appx. 342 (9th Cir. 2007)). M.'s transitional goals were fraudulently and maliciously presented.  Parent was notified that M. was on tract for graduation and progressing effectively and his class credits are all up to standard. Parent was notified that his current GPA towards graduation was 3.66.  Parent had mentioned that M. was falling behind and he need transitional goals to include taking summer classes so that he could get caught up with the credits required for graduation. Instead parent was reassured that he is not behind and his GPA at 3.66 shows that he progressing okay and does not need summer classes.  After the IEP meeting parent reevaluated M's progress again just to find out his GPA was inflated but his actual GPA towards graduation was 2.5 and in order to get caught up to graduate with college core classes`he would need to have three college core classes, and being provided accommodation to attend summer classes would help him be caught up. Summer class accommodation were denied.   Courts have found evidence of predetermination when a school has an unofficial policy of refusing to provide certain

programs or services. Deal v. Hamilton County Bd. of Educ., 392 F.3d 840 (6th Cir. 2004).   After the meeting parent received a Prior Written Notice with M. math accommodation taken away.  M. was determined to need 30 minutes of daily math assistance in order to progress effectively.  But this accommodation was taken away without parent consultation or determination from the IEP meeting.   Courts have found evidence of predetermination when School staff decide a child's placement before or after an IEP meeting and without parental input. Spielberg v. Henrico County, 853 F. 2d 256 (4th Cir. 1988); School administration makes its determination prior to an IEP meeting and refuses to consider alternatives. H.B. v. Las Virgenes USD, 239 Fed. Appx. 342 (9th Cir. 2007); School staff fail to incorporate the suggestions of the parents or listen to the parents' concerns. L.B. v. Gloucester Twp Sch.   Dist., 489 Fed. Appx. 564, (3d Cir. 2012); M. is not on track to pursue postsecondary education or employment, consistent with the purposes of Public Law 93–112 [29 U.S.C. 701 et seq.].  M. does not demonstrate the State Academic Standards aligned with entrance requirements from credit-bearing coursework in the system of public higher education in the State 20 U.S. Code § 6311(D)(i) Predetermination is a procedural violation of the Individuals with Disabilities Act (IDEA) that deprives parents of the opportunity to meaningfully participate in their child's IEP. (20 U.S.C. §1415(F)(3)(E)(ii)). Denied parental protections 20 U.S.C. §

1400(d)(1)(B), 34 C.F.R. § 300.1(b): According to House Report 114-354 – Every Student Succeeds Act Sec.1010 of parent and family engagement; parent is allowed to have strategies that are feasible and appropriate to help her child to improve in his academic performance, pay attention to the child's disability and assist in the learning of the child by engaging with school personnel and teachers.

2. Plaintiff alleges that in 2016 she requested for school records only to find there was an IEP Amendment document in M's file that she was not aware of or given a copy of.   The amendments contained therein were not amendment that parent had been involved in decision making or even discussed  and approved in M's IEP meetings. Individuals disabilities Education Act ("IDEA"),    Parental participation in the IEP and educational placement process is central to the IDEA's goal of protecting disabled students' rights and providing each disabled student with a FAPE. 20 U.S.C. § 1400(d); *Bd. of Educ. v. Rowley, 458 U.S. 176, 205–06 (1982).* The School District violated IDEA's explicit parental participation requirements by making changes to M's IEP without involving parent and filing the IEP Amendment in M's file and failing to notify parent.  20 U.S.C. § 1414(d)(1)(B). By denying parent an opportunity to participate in the IEP process, the School District denied M FAPE. IDEA-compliant stresses the important decision about parental participation at IEP meetings. *Doug C. v. Hawaii (9th Cir. 2013)*

3. Plaintiff alleges that at a meeting held on 10/06/2016. The School District had a systematic way of violating effective provision of FAPE. During the meeting there was no one in the meeting that could interpret evaluation results from Multidisciplinary Evaluation Team(MET) report because the School District was purposely not going to conduct an effective meeting.   Even the IEP team members that attended only came in as if to answer a roll call and then excused themselves informing parent they were going to another different IEP meeting because they were double scheduled.  Making the parent to interpret that her son's IEP meeting was not important but another student's IEP meeting was important which is discrimination on the basis of disability in violation of Individuals with Disabilities Education Act (IDEA),   Rehabilitation Act of 1973, § 504, as amended, 29 U.S.C.A. § 794; Americans with Disabilities Act of 1990, § 302, 42 U.S.C.A. § 12182). Parent wondered why the meeting was scheduled in the first place if no one was going to want to participate in it. The meeting was highly compromised. Informing parent that they were choosing to attend another student's IEP meeting is discrimination against parent and child on the basis of disabilities in full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of Public accommodation...."42 U.S.C.§12182(a)(1994). A member of the IEP Team described in 34 CFR 300.321(a)(2) through (a)(5) is not required to attend an IEP Team

meeting, in whole or in part, if the parent of a child with a disability and the public agency agree, in writing, that the attendance of the member is not necessary. This is also discrimination on the basis of disability in violation of Americans with Disabilities Act (ADA), Rehabilitation Act, and local law. Just the fact that the IEP members were leaving to attend to another child's IEP meeting, it shows that the meeting was predetermined and the IEP members had planned to not participate prior to the meeting. Predetermination is a procedural violation of the Individuals with Disabilities Act (IDEA) that deprives parents of the opportunity to meaningfully participate in their child's IEP. (20 U.S.C. §1415(F)(3)(E)(ii)).

4. Plaintiff alleges that from August to September 2016. The School District failed to make the child's IEP "accessible" to each teacher, related services provider, or any other service provider responsible for its implementation. 34 C.F.R. §300.323(d)(1). M's IEP was also not reasonably calculated to receive educational benefits. The IEP team stated they are not able to provide M with reasonably calculated educational benefits in the area of Math because they do not have resources to do that. So instead of providing Math in a regular math class, they took him out of his regular class and put him in an SLD math class that provides a standard level math instead of a regular math which was not reasonably calculated to enable M to receive educational benefits. The IDEA regulations require that at the beginning of each school year, each local

educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program...." 20 U.S.C. §1414(d)(2)(A). IDEA regulations also require that "as soon as possible following development of the IEP, special education and related services are made available to the child in accordance with the child's IEP." 34 C.F.R. §300.323(c). A student is considered "deprived of appropriate education" guaranteed by IDEA, for purposes of receiving compensatory services, when student's individual education plan (IEP) fails to confer some, i.e. more than de minimis, educational benefit to the student. Linda E. v. Bristol Warren Regional School Dist., D.R.I.2010, 758 F.Supp.2d 75. Education 863; Education 898(2).

5. Plaintiff alleges that in May 2016 M. qualified for eligibility under Emotional disability 34 C.F.R. § 300.8(c)(4) but was denied. M. condition has exhibited in one or more places over a long period of time and continues to affect his educational settings. Due to on and off depression, anxiety and most frequent and of daily occurrence; wandering, it affects in maintaining satisfactory relationships with teachers when they fail to provide accommodations. When he losses focus he starts to have racing thoughts that makes him wander from his normal seating. When he starts to wander he becomes argumentative especially when he feels threats of restrains

because he has to move.  According to eligibility creteria M. qualifies under this category.

6. Plaintiff alleges that in 2014, 2015 and 2016. M. did not demonstrate the State Academic Standards aligned for mathematics, reading or language arts, and science 20 U.S. Code § 6311.(b)(1)(c)   M. was denied meaningful benefit to a full educational opportunity in all related services in all classes.

7.  Plaintiff alleges that in 2015/2016 school year she was denied procedural safeguards before predetermining M. placement.  The School District was aware that M. could only function and needed one on one placement in a school setting.  Because the school did not want to provide complete accommodation in every class, the school without parent notification, went ahead to change M. placement for English without involving parent.  Parent was denied a copy of the IDEA Procedural safeguards, change of placement was done without IEP team members in violation of both procedural and substantive guidelines of the IDEA.  A district must provide parents with "prior written notice" whenever it proposes or refuses "to initiate or change, the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education." §300.503(a)(1); 20 USC 1415(b)(3). IDEA 2004 modified the minimum content requirements of the prior written notice. Under § 300.503(b)(1)-(7), the notice must include:

• A description of the action proposed or refused by the district.

• An explanation of why the district proposes or refuses to take the action.

• A description of each evaluation procedure, assessment, record, or report the district used as a basis for the proposed or refused action.

• A statement that the parents have protection under Part B's procedural safeguards.

• If the prior written notice is not an initial referral for an evaluation, the means by which a copy of a description of the procedural safeguards can be obtained.

• Sources for parents to contact to obtain assistance in understanding the provisions of Part B.

• A description of other options considered by the IEP team and the reasons why those options were rejected.

• A description of the factors relevant to the district's proposal or refusal.

It is found in § 1415, which is entitled "Procedural safeguards," is not without significance. When the elaborate and highly specific procedural safeguards embodied in § 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures

giving parents and guardians a large measure of participation at every stage of the administrative process, see, *e. g.,* §§ 1415(a)-(d).

8. Plaintiff alleges that in 2014, 2015 and 2016, Mesa Unified School District did not provide educational benefit meaningful to satisfy the requirements for a free appropriate public education (FAPE). M. was below his educational standard in core academic subjects in English, reading or language arts, mathematics, science, and was denied significant learning 34 CFR 300.10 sec. 9101(11) of ESEA 20 U.S.C. 1401(4) of IDEA and 20 U.S. Code § 6311

9. Plaintiff alleges that in 2014, 2015 and 2016 M. was removed from his appropriate classroom setting due to manifestation of his disabilities.   Record show he has Records shows 109 classroom absences, 52 tardies and 22 ALC in 2015/2016. 101 classroom absences, 50 tardies and 11 ALC in 2014/2015. These removals constituted a change of placement more than ten consecutive school day under 34 CFR 300.536. 34 CFR 300.530(b)(1), 20 U.S.C. 1415(k)(1)(B).   Mesa Unified School District failed it's legal duty imposed by IDEA 2004 on public school districts to "find" M who was in need of special education services. It was the School district's affirmative duty to locate, to identify and to evaluate M. in order to potentially eligibly provide special education services. IDEA 2004, 20 U.S.C. § 1412(a)(3) and 34 C.F.R. § 300.111.  There was enough "triggers" to cause reason to evaluate M

and provide accommodations.(triggers as listed above on 28 U.S.C. § 1443(1): Rights Under Federal Disability Statutes.)  School obligation to evaluate M. should have been triggered when a school district had reason to suspect both that (1) the student has a disability, and (2) a resulting need for special education services (see El Paso v. R.R., 2008**)**. Once that "trigger" is pulled, schools must evaluate the child within a reasonable time to meet IDEA 2004's requirements and avoid exposure to child find legal challenges and compensatory services claims (see El Paso v. R.R., 2008)  (Electronic Code Of Federal Regulations of IDEA PART B Procedural Safeguards Notice, Parents Rights Under the Individuals with Disabilities Education Act IDEA 2004.

### **STATE OF ARIZONA**

Plaintiff realleges all the above claims on this pleading and state that the State of Arizona and Mesa Unified school district conspired to obstruct due course of justice.  42 U.S.C. § 1985(2). Changing interpretation of a statute or a federal Statutory interpretation should not be used to cover up in avoiding decisions that are clear with honest declarations of what the law is and why. The Federal absenteeism policy that require absenteeism to be 10% of the 180 days school is a direct interpretation of text and changing interpretation has violation of 42 U.S.C. § 1985(3).  The State of Arizona have the same interpretive duties to the federal Constitution

as do federal officials because the Oath Clause of Article VI requires state and federal officials to take an oath to uphold the federal Constitution.     A prosecutor should not invidiously discriminate against, or in favor of, any person on the basis of constitutionally or statutorily impermissible criteria," and "should not use other improper considerations such as undue or appearance of influence, corruption and fraudulent actions in exercising prosecutorial discretion.,, Standards For Criminal Justice: Prosecution Function § 3-1.3. A prosecutor is not to bring or maintain criminal charges  "knows that the charges are not supported by probable cause."  and ought to have "sufficient admissible evidence to support a conviction" Standards For Criminal Justice: Prosecution Function § 3-3.9.  Supreme Court's decision in Berger v. United States, "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every

legitimate means to bring about a just one."   Berger v. United States, 295 US 78 - Supreme Court 1935.

## CAUSE OF ACTION AND CLAIMS

1. Plaintiff alleges every claim included on this pleading and states that an organization that receives federal funds violates § 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services. See Alexander v. Choate, 469 U.S. 287, 301-02 & n.21 (1985); Mark H., 513 F.3d at 937; Bird, 303 F.3d at 1020, 1022.7 M's disabilities render him qualified individuals as defined by 34 C.F.R. § 104.3(j), (l)(2), (m). Section 504 applies to Mesa Unified School District because it is a public school system. See 29 U.S.C. § 794(b)(2)(B); 20 U.S.C. § 7801(26)(A). Mesa Unified School District is liable for damages for violating § 504 if it failed to provide M. a reasonable accommodation that he needed to enjoy meaningful access to the benefits of a public education, and did so with deliberate indifference. See Mark H., 513 F.3d at 937-38; see also 29 U.S.C. § 794(a); 34 C.F.R. § 104.4.

2. Plaintiff alleges every claim included on this pleading and states that the 1991 Civil Rights Act permits emotional distress, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses. damages in cases brought

under Title VII, the Americans with Disabilities Act, 42 U.S.C. '12117(a), and the Rehabilitation Act of 1973, 29 U.S.C. '794(a)(1). See, generally, 42 U.S.C. ' 1981A (1991). Actual damages caused by a denial of procedural due process may be based on either the emotional distress caused by the denial of fair process, or by an unjustifiable deprivation of liberty or property attributable to lack of fair process.

3. Plaintiff alleges every claim included on this pleading and states that a cause of action under § 1985 for a conspiracy to deprive her of equal protection.  This statute was part of the Civil Rights Act of 1871, a piece of Reconstruction legislation that also included 42 U.S.C. § 1983. In its most pertinent provision, part (3), section 1985 provides that: If two or more persons... conspire.., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of the conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

4. Award of costs and a multiplier of the award of parent attorney's fees as appropriate for past, present, and future.

5.  For interest at the statutory rate;

6.  For such other and further relief as this court deems just and equitable.

## **CONCLUSION**

The undersigned Anne Prafada hereby certifies that the information provided herein is true to the best of her own knowledge.

Respectfully,

Signed and Executed on: 6ᵗʰ March 2018

**By: Anne Prafada,  Plaintiff, Pro Se Litigant**

**ORIGINAL of the foregoing filed and COPY of the foregoing mailed to:**

**ORIGINAL filed with the Clerk of the Court,**

United States District Court, 401 Washington St., Phoenix, Arizona, 85003

**COPY of the foregoing Served to:**

Maricopa County Attorney's Office, 301 W Jefferson St, Phoenix, AZ 85003

Mesa Unified School District, 63 E. Main St., #101, Mesa, AZ 85201-7422